IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RALPH J. GIVENS, | ) | Case No. 09-14401 (BLS) |
| | ) | |
| Debtor. | ) | |

## OPINION[1]

The matter before the Court is the *pro se* Chapter 11 individual Debtor's objection to secured claim no. 6-1 (the "Mortgage Claim") asserted by Ocwen Loan Servicing, LLC ("Ocwen" or the "Lender"). The Debtor's opposition to the Mortgage Claim is supported by Weir & Partners LLP ("Weir"), the Debtor's former counsel and a substantial creditor in this case. For the reasons that follow, the Court will reduce the Mortgage Claim from $82,043.75 to a secured claim in the amount of $10,500; the balance of the Mortgage Claim is and will be disallowed.

### I. INTRODUCTION

Ocwen was the mortgage servicer on the Debtor's primary residence. When presented with the opportunity to sell the residence on favorable terms in 2015, Mr. Givens tried to get a payoff figure from Ocwen in order to close on the sale. Ocwen failed to respond to his repeated inquiries. Because Ocwen could not provide this basic information, the proposed real estate sale in 2015 – which would have successfully wrapped up this case – fell through. Instead, this Debtor (an individual beset with significant health problems in addition to his financial issues)

---

[1] This Opinion constitutes the Court's finding of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The Court's findings of fact are informed by the Proposed Findings of Fact [Docket No. 233], which were offered into evidence by Weir and the Debtor and admitted without objection, as well as the Debtor's voluminous documentation, which likewise was admitted into evidence without objection or contradiction. *See* November 7, 2016 Hearing Tr. at pg. 11, 34.

saw his case languish for well over another year until a new buyer appeared, for a materially lower purchase price.

The sale nevertheless generated proceeds well in excess of Ocwen's Mortgage Claim, which would typically result in the secured creditor being promptly paid in full from its collateral.  However, following multiple hearings and a trial, the record developed thereby requires that Ocwen's Mortgage Claim be reduced by amounts commensurate with the losses and expenses incurred by the Debtor as a result of Ocwen's conduct.

## II.   JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III.   PROCEDURAL POSTURE

The Court authorized the sale of the Property (as hereinafter defined) in September, 2016, and that sale has now closed.  In the lead-up to that sale, this Court was obliged to conduct no fewer than two emergency hearings for the exclusive purpose of asking Ocwen to state what it believed it was owed.  When that number was finally produced by Ocwen on the eve of closing, neither the Court nor the Debtor were sufficiently confident in its accuracy to permit proceeds to flow to Ocwen at the closing.  Accordingly, this Court ordered (with the consent of Ocwen) that the sale of the Property could close, and net proceeds therefrom in the amount of $167,000 were placed in the Registry of the Court.

What is presently before the Court is a proceeding to determine the amount of Ocwen's secured claim and the Debtor's counterclaims against Ocwen for the conduct described above.

Given that the Debtor is proceeding *pro se*, the Court has liberally construed his requests for relief and relaxed certain procedural requirements to bring the matter to a decision upon a sufficient record. From the multiple hearings leading up to the November 7, 2016 evidentiary hearing, all parties (including Ocwen and Weir) were fully on notice that the Court would conduct a substantive hearing to consider Ocwen's claim as well as Mr. Givens' demands.[2]

### IV.    DISCUSSION

On December 14, 2009, the Debtor filed a voluntary Chapter 11 petition in this Court, and Weir was retained shortly thereafter by Order dated January 21, 2010 [Docket No. 30] to serve as counsel to the Debtor pursuant to 11 U.S.C. § 327(a). The assets to be treated in the Debtor's case consisted primarily of a number of tracts of real estate. Mr. Givens' Chapter 11 plan was confirmed on December 28, 2010. Pursuant to the terms of his confirmed plan, the Debtor listed and ultimately sold several parcels of real estate and fully paid the total amount of secured debt that was secured by those particular properties.

On July 1, 2014 Ocwen caused to be filed in the Debtor's case a Transfer of Claim Other Than for Security indicating that it was the transferee of the Mortgage Claim from Deutsche Bank National Trust Company, and that Ocwen had succeeded to the rights and obligations of the prior lender. As noted above, the Mortgage Claim relates to the Debtor's residence.

During the late spring of 2015, after years of trying, the Debtor finally obtained an agreement of sale to sell the last parcel, his personal residence located at 12048 Chipmans Pond Road, Laurel, Delaware (the "Property"). The proposed contract price for that sale was $215,000. The sale price would have been sufficient to pay all valid liens on the Property, as

---

[2]    *See* November 7, 2016 Hearing Tr. at pg. 10, 34.

well as to provide (i) a distribution to Weir on account of its allowed administrative expense claim in the amount of not less than $70,000, (ii) pay off the lien held by the Debtor's brother in the amount of $20,000, and (iii) ensure a meaningful distribution to unsecured creditors.

However, the uncontroverted record[3] reflects that the sale of the Property failed in 2015 because of the conduct of the Lender for the following reasons:

a. when the closing agent assigned to the sale of the Property requested and received a payoff from the Lender, the payoff statement was materially inaccurate in that it failed to account for the total amounts paid by the Debtor in certain months, while completely failing to acknowledge any payment in other months;

b. the Lender had charged the Debtor for an unspecified period of time for numerous other charges and costs, such as taxes, property insurance and flood insurance, including in excess of $21,000 in "Escrow" which were not properly due and owing by the Debtor and were improperly charged by the Lender to the Debtor; and

c. the Lender failed to timely respond to the repeated inquiries of the Debtor and his counsel to address the inaccuracies in its payoff statement and, as a result, the Debtor lost the sale of the Property in 2015.

The record further reflects that neither the Lender nor its agents took actions in a reasonable and timely manner to address the issues with the incorrect payoff statement, and as a result of the

---

[3] As noted, the Court's findings come in large measure from the Proposed Findings of Fact, which were neither contested nor objected to by Ocwen.

Lender's conduct, his bankruptcy proceedings were extended by over a year due to the loss of the sale.

The Lender failed to maintain a full and accurate accounting of the amounts properly due to it, and failed to justify or explain amounts improperly charged to the Debtor or application of payments to any such amounts improperly charges.  Issues relating to the Lender's incorrect statement of amounts due and owing could not be addressed before the proposed initial sale of the Property collapsed in 2015.

The record reflects that no other issues existed at the time of the proposed sale of the Property in 2015 that would have prevented the closing from taking place, and the parties were prepared to close.  In point of fact, prior to the failed sale in 2015 and in contemplation of that transaction, the Debtor and Weir had agreed to allow the sale with a payment to Weir of substantially  less than the full amount owed to Weir on account of its allowed attorneys' fees. The Debtor thus lost the opportunity to benefit from Weir's agreement to reduce the amount of its recovery on account of its administrative claim.

Since the Petition Date, the Lender and its predecessors in interest have been represented by no fewer than six (6) different lawyers and four (4) different law firms.  The Lender failed to timely update the Debtor and parties in interest regarding changes in representation of the Lender and in changes to the holder of the Mortgage Claim as required by Bankruptcy Rule 3002.1.  The record reflects that Lender's failure in this regarding directly and materially prejudiced the Debtor and impaired the orderly administration of this case.  Weir attempted repeatedly in 2015 to contact an attorney representing the Lender to attempt to reach a resolution on the amounts due and owing, without success due to the constant transfer of the file from attorney to attorney and

firm to firm. Specifically, Weir attempted in the summer of 2015 to contact counsel that filed the Mortgage Claim to address the incorrect payoff statement that had been obtained from the Lender by the closing agent. However, after numerous attempts and delays, Weir learned that the firm and attorney handling the loan file for the Lender had changed yet again, without any update reflected in the Debtor's case.

Numerous extensions of the closing deadline in the summer of 2015 were requested and obtained by Debtor, Weir and the closing agent, to allow for the Lender to either provide an accurate accounting to its claim or to reach a resolution with the Debtor on the amount due. Debtor repeatedly informed counsel to Lender that the purchaser would not continue to extend closing beyond August 2015 because the purchaser had young children that needed to be registered for school. Ultimately, as noted, the purchaser for the Property refused to further extend the closing date and the sale of the Property was lost. Thus, as a result of the Lender's failures, the Debtor was not able to sell the Property, consummate his confirmed Plan and distribute proceeds sufficient to enable him to obtain his discharge and to allow for the proper resolution of this case well over a year ago.

The record reflects that the Debtor has suffered a continuation of this case, continuing accrual of interest, late charges and other fees by the Lender, and interest on other liens on the Property, including a lien to the Delaware Department of Revenue that has increased from approximately $15,000 to $23,000. The Lender's failure to maintain an accurate accounting of the balance due has placed the Debtor in the position where he lost an arm's length sale that was materially superior to the price at which the Property was ultimately sold in 2016. Further, Debtor incurred significant legal fees to Weir for Weir's efforts to assist in bringing Lender into

compliance and allowing the sale of the Property to be closed.

Weir, both as counsel to Debtor and following its withdrawal, has incurred significant legal fees and expenses in direct connection to the improper activities of the Lender, the failed sale of the Property and activities thereafter in the amount of not less than $23,903.34 from May 1, 2015 through October 18, 2016. Following August, 2015, the Debtor has been required to pay post confirmation quarterly fees to the Office of the United States Trustee that he would not have to pay but for the delay caused by Lender. The Debtor has also incurred significant costs to maintain and repair the Property, for taxes relating to ownership of the Property and for insurance for the Property: these costs and expenses were thoroughly documented by the Debtor at trial and were not contested by Ocwen. None of these additional expenditures would have been incurred but for the failed sale of the Property in August, 2015.

Ocwen asserts that its secured claim is $82,043.75. From the sale of the Property that closed in September 2016, the Court is holding approximately $167,000 in its Registry. Ocwen contends therefore that it is fully secured and demands payment in full of its secured claim.

Debtor and Weir both contend that Ocwen's Mortgage Claim should be disallowed in its entirety, or at least materially reduced, on account of the conduct and the losses described above. The Court agrees that the Mortgage Claim must be reduced: the undisputed record developed at trial warrants reduction of Ocwen's secured claim by $71,543.75. The Mortgage Claim is allowed as a secured claim in the amount of $10,500, and the balance of the claim is disallowed.

The balance of the proceeds from the sale of the Property (after remittance of $10,500 to Ocwen) remain for distribution in accordance with the terms of the confirmed Plan and applicable provisions of the Bankruptcy Code. The Court is advised that Weir and the Debtor are

confident they can promptly reach a settlement regarding treatment of Weir's administrative claim for unpaid legal fees following issuance of this Opinion.

### V. CONCLUSION

For the reasons stated, Ocwen's Mortgage Claim will be allowed as a secured claim in the amount of $10,500; the remainder of the Mortgage Claim is disallowed.  An appropriate Order follows.[4]

Dated: January 17, 2017

BY THE COURT:

Brendan Linehan Shannon
Chief United States Bankruptcy Judge

---

[4] Pursuant to Local Rule 8003-1, the Court expressly notes and reserves its prerogative to materially supplement this Opinion in the event of an appeal.